UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

AL MICHAEL CARTER,

    Defendant (4).

Case No. 18-cr-20483

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [#167]**

**I. INTRODUCTION**

On March 14, 2019, Defendant Al Michael Carter ("Defendant") pled guilty to three counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1). ECF No. 102. Specifically, Defendant's Rule 11 Agreement states that Carter knowingly defrauded financial institutions by depositing three fraudulent checks and unlawfully withdrawing those funds from Flagstar Bank accounts. *Id.* at PageID.358-359. On June 26, 2019, Defendant was sentenced to 54 months imprisonment. ECF No. 119, PageID.488.

Presently before the Court is the Defendant's Motion for Compassionate Release. ECF No. 167. Following this Court's Order on July 27, 2020, Defendant's counsel submitted a supplemental brief. ECF No. 190. The Government filed a

Response on October 16, 2020. ECF No. 194. A hearing on this matter was held on November 16, 2020. For the reasons that follow, the Defendant's Motion [#167] is **DENIED**.

## II. FACTUAL BACKGROUND

Defendant Al Michael Carter was sentenced on June 26, 2019 to serve 54 months in custody.[1] *See* ECF No. 119. Defendant pled guilty to three counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1). ECF No. 102. According to his Rule 11 Agreement, Carter and co-defendants "knowingly participated in a scheme to defraud financial institutions and to obtain money and funds owned by and under custody and control of financial institutions." *Id.* at PageID.358. This conduct occurred from about October 6, 2017 to July 17, 2018. *Id.* Specifically, Defendant deposited three checks into Flagstar Bank accounts on at least three separate occasions. *Id.* at PageID.358-359. Defendant knew that the three checks were "fraudulently obtained, fraudulently written, and fraudulently deposited" with the intent to deceive the targeted financial institution. *Id.* at PageID.359.

---

[1] While Defendant asserts that his sentence is only 30 months, his Judgment states that he is to be imprisoned for "30 months on Counts 14, 15, and 16 to be served concurrently, and 24 months on Count 21 to be served consecutively to all other counts." ECF No. 119, PageID.488. Thus, Defendant's total term of imprisonment is 54 months.

Defendant now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of COVID-19. ECF Nos. 167, 190. Defendant is twenty-eight years old and is serving his sentence at the Federal Correctional Institute in Cumberland, Maryland. Defendant has a projected release date of September 27, 2021. ECF No. 194, PageID.1288.

In his instant Motion, Defendant argues that his medical history of extreme pain in his right side related to potential kidney stones, which culminated in a May 2020 surgery, amounts to a compelling and extraordinary circumstance warranting his early release. ECF No. 191, PageID.1182. Further, Defendant asserts that FCI Cumberland "is putting off [further] treatment until they have the virus under control." *Id.* He therefore requests that the Court grant him early release from his sentence.

### III. ANALYSIS

**A. Standard of Review**

Title 18 U.S.C. § 3582(c)(1)(A) governs this Court's authority to consider motions for compassionate release. As amended by the First Step Act of 2018, the relevant statutory language provides that a court may grant compassionate release under the following circumstances:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from

3

the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, a court must address two key questions. The first is whether a defendant has first exhausted all administrative remedies with the BOP. The second is whether, after considering "extraordinary and compelling reasons," as well as the sentencing factors set forth in 18 U.S.C. § 3553(a), warrant a sentence reduction.

Moreover, a sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). U.S. Sentencing Guidelines Manual § 1B1.13 is the "applicable policy statement" which this Court must comply with. This section explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g). Further, a defendant must fit within at least one of four categories of "extraordinary and compelling reasons." Application Note 1 to U.S.S.G. § 1B1.13 provides, in relevant parts, when extraordinary and compelling reasons exist:

(A) Medical Condition of the Defendant

(ii) The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or

4

> cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> …
>
> (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Here, Defendant asserts that the calcified masses in his kidney and continual pain, combined with his continued incarceration during the COVID-19 pandemic, place him at an elevated risk of serious complications if he were to contract COVID-19. ECF No. 172, PageID.934.

### B. Exhaustion

The First Step Act of 2018 amended 18 U.S.C. § 3582 to permit defendants to move for compassionate release themselves. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018). In a defendant-initiated motion for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the BOP or waiting thirty days from when the warden at the facility received his or her request. 18 U.S.C. § 3582(c)(1)(A).

The Sixth Circuit recently held that while the administrative exhaustion requirements under § 3582(c)(1)(A) are not jurisdictional, they are mandatory.

5

*United States v. Alam*, 960 F.3d 831, 2020 U.S. App. LEXIS 17321 (6th Cir. 2020). In *Alam*, the Sixth Circuit rejected defendant's argument that the "unprecedented" nature of the COVID-19 pandemic should serve as an exception to the statute's exhaustion requirement. *Id.* at *11 (concluding that "[t]hirty days hardly rises to the level of an unreasonable or indefinite timeframe.") (internal quotation marks omitted).

Here, the Government states that exhaustion is not an issue in this case. ECF No. 194, PageID.1292. Indeed, Defendant petitioned the warden for consideration for compassionate release on August 6, 2020. ECF No. 191-6, PageID.1201. The warden denied that request shortly thereafter, finding that Defendant's medical concerns were not a criteria for compassionate release consideration. *Id.* Accordingly, Defendant has exhausted his administrative remedies with the BOP.

### C. Extraordinary and Compelling Reasons

As discussed *supra*, for a court to grant compassionate release, a defendant must also demonstrate that "extraordinary and compelling reasons" exist to warrant a reduction in sentence. 18 U.S.C. § 3582(c). The Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling reasons" in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. § 1B1.13. These reasons are classified in four categories: (1) the defendant's medical condition; (2) the

defendant's age; (3) family circumstances; and (4) additional reasons "other than, or in combination with" the first three elements. *Id.* at cmt. n.1(A)-(D).

Here, Defendant's request for compassionate release centers around his experiences this year with hematuria, also known as blood in the urine, accompanied by persistent pain in his right side. This condition was initially attributed to kidney stones, and Defendant underwent surgery on May 26, 2020 to extract the stones. ECF No. 191, PageID.1182. Defendant states that while no kidney stones were discovered during the surgery, he was instead "informed he had several calcified masses in his abdomen on his right side" that were not extracted. *Id.* Carter also asserts that he remains in pain and has been unable to contact his treating doctors to discuss future treatment and surgeries. *Id.*

The Government acknowledges Defendant's prior surgery, but refers to his July 2020 medical records that indicate the calcified bodies in his abdomen are stable, intact, and do not typically cause symptoms. ECF No. 194, PageID.1295-1296. Specifically, the Government attaches Defendant's most recent medical record, dated July 27, 2020, which states that Defendant "continues to experience[] infrequent short episodes of pain" but "denies any association of pain do to activity, urination or emotional stress." ECF No. 196-4, PageID.1319. The Government thus argues that this infrequent and minor pain reported by Defendant is insufficient to

meet the extraordinary and compelling circumstances warranting compassionate release.

The Court is inclined to agree with the Government here. The medical records provided by both Defendant and the Government do not suggest that Defendant's surgery or prior hematuria is ongoing or placing him at a risk of serious illness. This is in contrast to *Bandrow*, a case from this District where a defendant with multiple medical conditions—including untreated hematuria—was granted compassionate release. *United States v. Bandrow*, No. 17-CR-20077, 2020 WL 4050242, at *3 (E.D. Mich. July 20, 2020). In *Bandrow*, the district court noted that the defendant, who suffered from epilepsy, asthma, hematuria, and a COVID-19 diagnosis, had been denied the medical procedures necessary to address his hematuria at FCI Elkton. *Id.* at *2. Citing to some preliminary research, the district court postulated that hematuria "may be a symptom of a serious kidney issue," and that "impaired kidneys may create a greater risk of death in COVID-19 patients." *Id.* at *4 (citing to two early studies about the potential impact of kidney impairment on COVID-19 severity). The totality of the defendant's conditions and circumstances lead the district court to grant compassionate release.

In the instant matter, however, Defendant was able to receive medical care for his calcified masses within two months of his initial complaint of pain. *See* ECF No. 194, PageID.1295. Unlike *Bandrow*, Carter's medical conditions did not go

8

untreated and did not escalate to identification of a "serious illness/critical illness" by the BOP. No. 17-CR-20077, 2020 WL 4050242, at *3. Further, Defendant does not present any additional medical conditions or diagnoses that have been proven to increase COVID-19 severity, such as heart failure, asthma, or diabetes. *See People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated Sept. 11, 2020). Finally, the Court recognizes the novel and evolving nature of COVID-19 research as it relates to various medical conditions, including kidney maladies. Defendant's condition as pleaded, however, does not suggest that he currently suffers from a critical or untreated illness at this time. Thus, this Court cannot conclude that Defendant's prior hematuria and kidney stone surgery is sufficient to meet the extraordinary and compelling standard under 18 U.S.C. § 3582(c)(1).

Defendant is also almost forty years younger than the CDC's classification of adults sixty-five years and older who are at higher risk of COVID-19 complications. Other district courts have granted compassionate release only upon a finding of numerous and severe medical conditions that place them at a significantly higher risk for severe illness from COVID-19. *See, e.g., United States v. Doshi*, No. 13-CR-20349, 2020 WL 2556794 (E.D. Mich. May 20, 2020) (granting compassionate release for an elderly inmate with hypertension, diabetes, asthma, hyperlipidemia,

9

and other preexisting conditions); *Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *1 (E.D. Mich. Apr. 9, 2020) ("The CDC also states that individuals with underlying medical conditions, such as a chronic lung disease, a serious heart condition, and liver disease, have a higher risk of severe illness ... Miller suffers from all three.").

In sum, upon consideration of precedent for granting compassionate release and the particular facts of his case, Defendant has not presented extraordinary and compelling circumstances that warrant his early release.

### B. Determination of Dangerousness to the Community and the 18 U.S.C. § 3553(a) Factors

As a final matter, a district court must determine that the defendant does not present a danger to the community, as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13. Additionally, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) and determine whether such factors support or undermine the sentence reduction. *See id.*

Here, the Government argues that Defendant is ineligible for compassionate release because he is a danger to the community. ECF No. 194, PageID.1297. It highlights the strain of limited resources which society's first responders are currently operating within during the COVID-19 pandemic. *Id.* Defendant asserts that he is not a danger to the community because his underlying offense was non-

violent, and he has no drug-related convictions on his record. ECF No. 191, PageID.1189.

Upon consideration of the present facts, the Court concludes that a non-violent offender like Defendant, who was involved in a complex, multi-defendant conspiracy scheme to commit identity theft and defraud financial institutions, may qualify as a danger and thus forecloses relief requesting early release. The Court sentenced Defendant to fifty-four months imprisonment, which reflects the seriousness of the offense and the high degree of Defendant's involvement in the fraudulent activity. The Court did not and continues to not treat Defendant's conduct lightly.

The Court also agrees with the Government that consideration of the factors set forth in 18 U.S.C. § 3553(a) do not weigh in favor of granting the requested relief. The factors set forth in § 3553(a) include a defendant's history and characteristics; the nature and circumstances of the offense; due consideration of the seriousness of the offenses; promoting respect for the law; providing just punishment; affording adequate deterrence; protecting the public from further crimes by the defendant; and providing him or her with any necessary correctional services and treatment. See 18 U.S.C. § 3553(a).

Here, Defendant still has about ten months to serve of his sentence after he participated in a complex scheme to defraud both individuals and financial

11

institutions. The Government asserts that Carter "was involved in multiple acts of fraud over an extended period of time, with an organized network of co-conspirators." ECF No. 194, PageID.1299. The seriousness of both the offense and Carter's conduct is reflected in the fifty-four-month sentence imposed upon Defendant. Additionally, the Government notes that Defendant has multiple prior convictions, including for receiving or concealing a stolen motor vehicle, carrying a concealed weapon, and felonious assault. *Id.* at PageID.1300-1301. Together, these facts do not indicate that early release is warranted at this time.

In sum, the Court finds that granting Defendant compassionate release at this juncture would inappropriately minimize the serious nature of his decision to steal the identities of innocent victims and defraud financial institutions for monetary gain. Accordingly, the § 3553(a) sentencing factors also weigh against Defendant's early release.

### IV. CONCLUSION

For the reasons discussed herein, Defendant's Motion for Compassionate Release [#167] is **DENIED**.

**IT IS SO ORDERED.**

s/Gershwin A. Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: November 16, 2020

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record and on Al Michael Carter, No. 57018-039, Federal Correctional Institution Cumberland, 14601 Burbridge Road SE, Cumberland, Maryland, 21502 on November 16, 2020, by electronic and/or ordinary mail.

<u>/s/ Teresa McGovern</u>
Case Manager